**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| IOM GRAIN, LLC, f/k/a H&B | ) | |
| CONDITIONING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:10-CV-337-TLS |
| | ) | |
| ZEA GLOBAL SEEDS, SA, and | ) | |
| ILLINOIS CROP IMPROVEMENT | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant Illinois Crop Improvement Association,

Incorporated's Motion to Dismiss [ECF No. 26], filed on February 28, 2011. For the reasons

stated in this Opinion and Order, the Court will grant in part and deny in part Defendant ICIA's

Motion.


**PROCEDURAL BACKGROUND**

The Plaintiff, IOM Grain, LLC, filed this action in the Jay Circuit Court, Jay County,

Indiana, on August 19, 2010 [ECF No. 1], alleging breach of contract against Defendant ZEA

Global Seeds, fraudulent misrepresentation against Defendant ZEA and Defendant Illinois Crop

Improvement Association (ICIA), constructive fraud against Defendant ICIA, negligent

misrepresentation against Defendant ICIA, breach of fiduciary duty against Defendant ICIA, and

civil conspiracy against both Defendants. Defendant ICIA removed the case to this Court

pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446 on September 29, 2010 [ECF No. 2], and filed

an Amended Notice of Removal [ECF No. 8] on October 12, providing more complete

jurisdictional information. Defendant ICIA filed a Motion to Dismiss on December 3 [ECF No.

14]. The Plaintiff responded by filing an Amended Complaint on January 27, 2011 [ECF No.

22], and the Court therefore denied the original Motion to Dismiss as moot on February 3 [ECF

No. 24]. On February 28, Defendant ICIA filed the Motion to Dismiss that is presently before the

Court [ECF No. 26], along with a corresponding Memorandum of Law in Support of

Defendant's Motion to Dismiss [ECF No. 27]. The Plaintiff responded on April 29 [ECF No.

32], and Defendant ICIA replied on May 13 [ECF No. 33]. Although the Plaintiff averred to

Magistrate Judge Roger Cosbey during a telephonic conference on November 3, 2010, that

service was being obtained on Defendant ZEA Global Seeds [ECF No. 13], nothing in the record

indicates that Defendant ZEA has ever been served in this matter.


## FACTUAL BACKGROUND

This case arises from a failed contractual relationship. According to the Amended

Complaint, the Plaintiff is an Indiana limited liability company that supplies high quality non-

GMO food grade soy beans and corn to domestic and international markets. (Am. Compl. ¶¶ 1 &

7, ECF No. 22.) The sole member of the Plaintiff is Ramon Loucks, who has been at all times

relevant to this lawsuit—and remains—a citizen of Indiana. (Timothy P. Scahill Aff. 1–2, ECF

No. 8, Ex. 4.) According to the Amended Complaint, ZEA is an Argentinian corporation that

provides winter season soy bean nursery services at farms in Argentina. (Am. Compl. ¶¶ 2 & 8.)

Finally, ICIA is an Illinois corporation that provides seed certification and field services to

agricultural companies throughout the world. (*Id.* ¶¶ 3 & 9.)

As no member of the Plaintiff is a citizen of the same State as Defendant ICIA, Defendant ZEA is a foreign corporation incorporated under the laws of Argentina, and the amount in controversy exceeds $75,000, the Court finds that complete diversity exists. (Notice of Removal 1–3; Am. Notice of Removal 1–2; ECF No. 8, Ex. 1C.)

In early 2008, Defendant ICIA contacted the Plaintiff about the possibility of doing business with some of ICIA's business partners. Specifically, Dennis R. Thompson, CEO of Defendant ICIA, introduced the leadership of the Plaintiff and the leadership of ZEA through a telephone conversation and email on or about April 8, 2008. (*Id.* ¶ 14.) In his April 8 email, Thompson stated that ZEA was a "topnotch concern[] with whom ICIA has great respect." (*Id.* Ex. A, ECF No. 22-1.) He then made specific statements about ZEA's organization and capabilities, outlining a potential arrangement between the Plaintiff and ZEA. In the same email, he referred to ZEA as "ZEA Global Seeds via our Global Seed Solutions (GSS)." (*Id.*) Global Seed Solutions was incorporated on August 5, 2008, with ICIA and ZEA as the sole shareholders. (*Id.* Ex. D, ECF No. 22-4.) In the April 8 email, Thompson noted that under the proposed deal, ZEA would "compensate ICIA under the proposed GSS agreement." (*Id.*) Nowhere in this email did Thompson mention ZEA's financial condition; the Plaintiff claims ZEA's financial condition at the time was poor.

In the late spring and early summer of 2008, the Plaintiff and ZEA engaged in negotiations for ZEA to provide the Plaintiff's needs for high quality non-GMO food grade quality soy beans. Defendant ICIA—through Thompson—was apparently involved in these negotiations. Plaintiff alleges that:

> As part of this process, Thompson had meetings with ZEA executives individually and jointly with executives from IOM. IOM's representatives were concerned about

> ZEA's ability to perform and ZEA's creditworthiness. They repeatedly inquired of Thompson regarding ZEA's creditworthiness and ability to perform and received Thompson's reassurances regarding these matters. Thompson concealed information regarding the true financial condition of ZEA at this time.

(Am. Compl. ¶ 19.) In June 2008, ZEA provided the Plaintiff with an initial quote, which was apparently unacceptable, and negotiations continued. (*Id.* ¶ 21.)

By late July 2008, ZEA requested that the Plaintiff provide a down payment so ZEA could begin purchasing seeds and land under the prospective contract. (*Id.* ¶ 22.) ZEA informed the Plaintiff on or about July 28, 2008, that it would need funds that same week. (*Id.* ¶ 23.) The Plaintiff responded that it required additional financial information from ZEA before going forward. (*Id.* ¶ 24.) At this point, Defendant ICIA apparently forwarded ZEA the needed funds without the Plaintiff asking it to do so. In a July 30 email, Thompson informed the Plaintiff that Defendant ICIA would forward the funds to ZEA "to pull this project together this week." (*Id.* Ex. B, ECF No. 22-2.) In his July 30 email, Thompson referred to ZEA as "our strategic partner," and further stated that "ICIA has put a pony in the race!!!" (*Id.*) IOM President Ramon Loucks responded—via email—by thanking Thompson for his action. (*Id.*)

The Plaintiff alleges that by taking this action, Defendant ICIA voluntarily assumed a role as the Plaintiff's agent, "in the business of providing representations regarding ZEA to IOM," the end result of which was a contract between the Plaintiff and ZEA. (Am. Compl. ¶ 27.)

The financial information that the Plaintiff requested from ZEA included two years of balance sheets, two years of profit and loss statements, and the prior year's tax filings. (*Id.* Ex. B.) ZEA apparently provided these documents to the Plaintiff by August 2, 2008. (*Id.* Ex. C.)

On August 6, 2008, ZEA informed the Plaintiff that ZEA owed $7000 to Defendant

4

ICIA, and requested that the Plaintiff—instead of paying ZEA directly—instead forward funds to Defendant ICIA to cancel ZEA's outstanding balance. (*Id.* Ex. C, ECF No. 22-3.) Also on August 6, Defendant ICIA informed the Plaintiff via email about the formation of GSS (*See id.* Ex. D), and in the same email noted that ZEA "really could use the comfort of the signed document and transfer of monies." (*Id.*) On or about August 7, the Plaintiff sent a signed Letter of Intent to ZEA, and sent the funds to Defendant ICIA as requested by ZEA. (*Id.* Ex. E, ECF No. 22-5.) In September 2008, representatives from ZEA, the Plaintiff and Defendant ICIA met in Argentina to finalize a contract. (Am. Compl. ¶ 32.) Thompson participated in the discussions, meeting with ZEA executives alone and with executives from ZEA and the Plaintiff together. (*Id.* ¶ 33.) On September 16, 2008, ZEA and the Plaintiff signed a contract for ZEA to provide the Plaintiff with soybeans between April and October 2009. (*Id.* Ex. F, ECF No. 22-6.) The Plaintiff alleges that it "relied on Thompson" during the negotiations, and the contract was signed "with the assistance and facilitation of ICIA." (Am. Compl. ¶¶ 33 & 34.) The contract is written on the Plaintiff's letterhead, and purports to be "the final, complete and exclusive statement of the agreement between the parties." (*Id.* Ex. F.)

Apparently by December 2008, due to the Plaintiff's concerns that ZEA might not be able to perform under the terms of the contract, the parties began negotiating a revised contract. The Plaintiff alleges it notified Thompson of its ongoing concerns, and he "pledged to pursue solutions." (Am. Compl. ¶ 36.) All parties again met in Argentina in January 2009. (*Id.* ¶ 37.)

During the January 2009 meetings, the Plaintiff alleges the following:

Thompson met individually with ZEA to discuss its financial status and repeatedly reassured representatives from IOM of the financial health of ZEA. Specifically, during these meetings, Thompson stated to Ramon Loucks, president of IOM, that ICIA was providing funding to ZEA in order to ensure ZEA's

5

> financial stability. Thompson also verbally represented to Mr. Loucks that ZEA
> will fulfill its financial obligations under the 2008 Contract. ICIA failed to
> disclose that ZEA might not be able to perform its obligations under the 2008
> Contract. IOM relied on these reassurances of Thompson of ZEA's financial
> health in continuing to attempt to work out its issues with ZEA.

(*Id.* ¶ 38.) The Plaintiff does not allege the existence of any written agreement wherein

Defendant ICIA promised to answer for the debts or obligations of ZEA. (*Id.*)

In summer 2009, a contractual dispute arose between ZEA and the Plaintiff concerning

export taxes, and "the deal collapsed completely in late summer 2009." (*Id.* ¶¶ 40 & 42.) The

Plaintiff alleges it was never informed of ZEA's poor financial condition by Defendant ICIA,

and ultimately "learned of ZEA's poor financial condition from farmers on the ground in

Argentina." (*Id.* ¶¶ 43 & 45.) The Plaintiff additionally alleges damages because of the breach of

contract and because of "ZEA and ICIA's continued misrepresentations regarding ZEA's

financial situation and capabilities to perform under the 2008 Contract." (*Id.* ¶¶ 48 & 50.) It

alleges financial damages as well as damage to credibility and reputation. (*Id.*) Finally, the

Plaintiff alleges breach of contract damages against ZEA to be computed under the terms of the

contract. (*Id.* ¶¶ 51 & 52.)

The Plaintiff's claims against Defendant ICIA include fraudulent misrepresentation

(Count II), constructive fraud (Count III), negligent misrepresentation (Count IV), breach of

fiduciary duty (Count V), and Civil Conspiracy (Count VI). Defendant ICIA argues in its briefs

that the claims against it should be dismissed under Federal Rule of Civil Procedure 12(b)(6) due

to a failure to plead a false statement of material fact, a failure to plead fraud with particularity,

the lack of a fiduciary relationship, the statute of frauds, unjustified reliance, and the rule barring

recovery of economic damages for negligence, among other reasons.  The Plaintiff argues that

the statute of frauds is inapplicable, that a fiduciary duty existed, and that it has satisfied the

requirement to plead false material facts as well as the heightened pleading standards for fraud,

among other arguments. Additionally, the parties have raised a possible choice of law question,

with the Plaintiff arguing the substantive law of Indiana should apply while Defendant ICIA

asserts that the laws of Illinois are controlling.


## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510,

1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in

the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn

from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir.

1995).

The Supreme Court has articulated the following standard regarding factual allegations

that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitlement to relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do. Factual allegations
> must be enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if doubtful in
> fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and

footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is

plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 1950–51. A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, — F.3d —, No. 09-2998, 2011 WL 206155, at *7 (7th Cir. Jan. 25, 2011); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("A plaintiff 'pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'") (quoting *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006)); *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). In determining whether the complaint has properly stated a claim for relief, a "reviewing court [should] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

Additionally, when pleading fraud, the federal rules set a higher bar. Federal Rule of Civil Procedure 9(b) states that in fraud cases, "a party must state with particularity the circumstances constituting fraud." The Seventh Circuit has stated that Rule 9(b) "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chi.*, 927 F.2d 988, 992 (7th Cir. 1991). To satisfy the requirement of Rule 9(b), a plaintiff pleading fraud must state "the

identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *Bankers Trust Co. v. Old Republic Ins. Co*, 959 F.2d 677, 683 (7th Cir. 1992). Stated differently, a plaintiff pleading fraud must state "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *Skinner v. Metro. Life Ins. Co.*, — F. Supp. 2d — , No. 3:09 CV 394, 2010 WL 2175834, at *4 (N.D. Ind. May 27, 2010). It is essential that a complaint under Rule 9(b) "sufficiently allege[s] the defendant's fraudulent intent." *Graue Mill*, 927 F.2d at 992. Additionally, "[c]ryptic statements suggesting fraud are not enough." *Id.* (quotation marks and citations omitted). "Rather, pleadings must state the 'specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Id.* (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)). However, Rule 9(b) does not require a plaintiff to plead "facts showing that the representation is indeed false." *Bankers Trust*, 959 F.2d at 683; *see also CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1110 (N.D. Ind. 2011). Finally, the heightened pleading requirements of Rule 9(b) may apply even if the complaint is not for fraud, if the complaint "sounds in fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (a claim "sounds in fraud" if "premised upon a course of fraudulent conduct"); *Rombach v. Chang*, 355 F.3d 164, 167, 170–71 (2d Cir. 2004); *Rosenbaum v. Seybold*, No. 1:06-CV-352-TS, 2008 WL 2518697, at *2 (N.D. Ind. June 20, 2008) ("The Seventh Circuit has held that Rule 9(b) heightened pleading applies to all claims with factual allegations involving fraud,

even if the claims are not, by definition, fraudulent torts.").

# DISCUSSION

## A.     Choice of Law

As a preliminary matter, the parties have raised a possible choice of law issue, which the Court will resolve before proceeding further. As the Seventh Circuit has noted, "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states." *Barron v. Ford Motor Co.*, 965 F.2d 195, 197 (7th Cir. 1992). The Plaintiff argues that Indiana law should apply to all claims, and Defendant ICIA argues for the substantive law of Illinois. However, neither side has argued that the substantive laws are different or would affect the outcome in this case. The Plaintiff states this is a case "where the parties have not identified a conflict between the two bodies of state law that might apply." (IOM's Resp. in Opp. to ICIA's Mot. to Dismiss 4.) Defendant ICIA states there is no difference in the substantive law to be applied, and further states its belief that the outcome is the same under either Illinois or Indiana law. (Reply in Supp. of Mot. to Dismiss 1–2.)

The Plaintiff also states that there are conflicts between Illinois and Indiana law in this case, but appears to be referring only to the difference between fact pleading and notice pleading. (IOM's Resp. in Opp. to ICIA's Mot. to Dismiss 5–6.) *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 605 (7th Cir. 1987) ("The standard for determining whether a complaint states a cause of action differs under Illinois law and federal law. Illinois is a fact-pleading

State."). As Defendant ICIA states, "the applicable pleading standards are undisputedly governed by federal law rather than the law of any state." (Reply in Supp. of Mot. to Dismiss 1.) *See Polansky v. Anderson*, No. 04 C 3526, 2005 WL 3557858, at *8 n.13 (N.D. Ill. Dec. 29, 2005) ("In diversity jurisdiction cases . . . we apply federal procedural law and state substantive law."). Because this is the only potential conflict of law raised by either party, and because the Court determines it is a non-issue, choice of law analysis is not necessary, and the Court will apply the substantive law of the forum state—Indiana.[1] *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies of state law that might apply to their dispute, we will apply the law of the forum state.").

## B.    Count II - Fraudulent Misrepresentation

In Indiana, a plaintiff asserting an action for fraudulent misrepresentation must prove the following five elements:

> 1) the defendants made false statements of past or existing material facts; 2) the defendants made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; 3) the defendants made the statements to induce the plaintiff to act upon them; 4) the plaintiff justifiably relied and acted upon the statements; and 5) the plaintiff suffered injury.

*Desimone v. Quicken Loans, Inc.*, No. 1-09-cv-01421-WTL-MJD, 2011 WL 900947, at *2 (S.D. Ind. Mar. 15, 2011) (citing *Hizer v. Holt*, 937 N.E.2d 1 (Ind. Ct. App. 2010)); *see also Tru-Cal, Inc. v. Conrad Kacsik Instrument Sys., Inc.*, 905 N.E.2d 40, 44–45 (Ind. Ct. App. 2009) (listing

---

[1]Because the parties have not identified a conflict of laws, the Court need not reach the parties' arguments about the choice of law analysis in *Ormond v. Anthem, Incorporated*, No. 1:05-cv-1908-DFH-TAB, 2009 WL 3163117 (S.D. Ind. Sept. 29, 2009).

elements of fraud in the inducement).[2] Additionally, as articulated above, a plaintiff pleading fraud must comport with the heightened pleading requirements of Rule 9(b).

Concerning the allegations of actual fraud, Defendant ICIA argues that the Plaintiff has not alleged statements of existing fact but rather statements of opinion and statements regarding future occurrences, that the pleadings do not meet the heightened pleading requirements of Rule 9(b), that some of the Plaintiff's fraud claims are vitiated by the statute of frauds, and that the Plaintiff has not alleged justifiable reliance. The Plaintiff counters that it has pleaded statements of existing fact, not future events or occurrences, that it has satisfied the requirements of Rule 9(b), that the statute of frauds is inapposite, and that the reasonableness of its reliance must be judged by the trier of fact. Accepting the Plaintiff's well-pleaded allegations as true, viewing them in the light most favorable to the Plaintiff, and drawing reasonable inferences from the allegations, *see Whirlpool*, 67 F.3d at 608, the Court concludes that the Plaintiff has stated a claim for fraud.

The Plaintiff has alleged that Thompson assured IOM representatives in the late spring to early summer of 2008 that ZEA was creditworthy and able to perform under a putative contract. (Am. Compl. ¶¶ 18 & 19.) This is not the statement of a future occurrence. *See Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC*, No. 1:06-cv-1435-SEB-JMS, 2008 WL 4367554, at *10 (S.D. Ind. Sept. 18, 2008) ("any representation made about the current status of

---

[2]The Court notes that Indiana courts have also articulated the elements of fraud without the requirement that the defendant made the fraudulent statement with the intent to induce the plaintiff to act. *See Heyser v. Noble Roman's Inc.*, 933 N.E.2d 16, 19 (Ind. Ct. App. 2010); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 667 (Ind. Ct. App. 2002); *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998). The Plaintiff has provided the Court with a statement of the law which includes the elements for fraudulent inducement, however. (IOM's Resp. Opp. ICIA's Mot. to Dismiss 12.) As Defendant ICIA has failed to suggest that the element of intentional inducement is unsatisfied by the Complaint, the Court merely notes the element's inclusion.

[a potential future event] would have been a statement about a contemporaneous fact."). This is not the statement of an opinion. *See Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 478 F. Supp. 2d 1076, 1089 (S.D. Ind. 2007) (presently-existing facts are "susceptible to exact knowledge," which "includes unqualified guarantees") (internal quotation marks omitted); *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1411 (7th Cir. 1986) ("An opinion is a subjective statement of belief 'on which no reasonable [person] should justifiably rely'"; "an unqualified guarantee is 'an objective statement of fact' upon which reliance may be justified.") (quoting *Whiteco Props. Inc. v. Thielbar*, 467 N.E.2d 433, 437 (Ind. Ct. App. 1984)). Viewed in a light most favorable to the Plaintiff, this is a statement about the presently-existing condition of ZEA Global Seeds. Defendant ICIA has cited a variety of cases applying Illinois substantive law for the proposition that generalized statements about financial health or future performance will not support a claim of fraud.[3] But the Court is persuaded, viewing the allegations in the light most

---

[3]As the Court is applying Indiana substantive law, these cases are persuasive only. However, on this point and throughout this Opinion, the Court will briefly analyze the persuasive authority in the interest of completeness. In *Weeks v. Samsung Heavy Industries*, 126 F.3d 926, 940 (7th Cir. 1997), the Seventh Circuit applied its reasoning from *LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 568 (7th Cir. 1991). The *LaScola* court held that an employer's statement that a company was comprised of "a bunch of straight shooters" was "too general and difficult to substantiate to be considered [a] statement[] of fact." *Id.* The Court finds Thompson's alleged statements that ZEA was creditworthy and capable of performing under the proposed contract to be more specific and capable of substantiation than the statements analyzed by the Seventh Circuit in *Weeks* and *LaScola*. Additionally, *Illinois Non-Profit Risk Management Association v. Human Service Center of Southern Metro-East*, 884 N.E.2d 700 (Ill. App. Ct. 2008) and *Gold v. Vasileff*, 513 N.E.2d 446 (Ill. App. Ct. 1987) are distinguishable on their facts. The *Illinois Non-Profit* court found the statement that the financial entity "did not have a cash-flow problem" to be opinion, and not actionable in fraud. *Ill. Non-Profit*, 884 N.E.2d at 710. The *Gold* court found the "promise that a third party will perform his contractual obligations in the future" not actionable. *Gold*, 513 N.E.2d at 448. The Court finds Thompson's alleged statements about ZEA's creditworthiness to be more susceptible of exact knowledge than a statement that a company did not have a cash-flow problem. The Court finds Thompson's alleged statements about ZEA's present ability to perform to be more than mere promises that ZEA would perform in the future. The Court distinguishes the rest of the Illinois cases cited by Defendant ICIA because they present statements of opinion or statements describing future events.

13

favorable to the Plaintiff and drawing reasonable inferences therefrom, that the Plaintiff has alleged more than generalized statements about the financial health or future performance of ZEA. The Plaintiff has alleged that Thompson stated ZEA was creditworthy, and was capable of performing under the terms of the tentative contract. Thompson worked as CEO of a corporation that supplied services to agricultural companies around the world, and he was working to formulate an international grain contract with specific terms that were being cemented by the parties. If he said—as the Plaintiff alleges—that ZEA was creditworthy and capable of performing under the terms of the contract that was being discussed, the Plaintiff could have taken his words as statements of material fact upon which to rely. *See Whiteco*, 467 N.E.2d at 437.

Both parties have argued the case of *Reginald Martin Agency, Inc. v. Conseco Medical Insurance Co.*, 478 F. Supp. 2d 1076, and the Court finds the reasoning there persuasive. In *Reginald Martin*, the plaintiff alleged the defendant insurance company made statements that it was "financially stable" and "profitable," *id.* at 1087, when in fact "it was hemorrhaging millions of dollars." *Id.* at 1090. The *Reginald Martin* court denied the defendant's summary judgment motion because it found the defendant's statements to be actionable in fraud. Defendant ICIA seeks to distinguish *Reginald Martin*, arguing that the question of whether a business is profitable or is hemorrhaging millions of dollars is "obviously capable of a mathematically precise calculation," and insists only an allegation that ICIA misrepresented "specific financial metrics" would be actionable in fraud. (Reply Supp. Mot. to Dismiss 9.) The Court disagrees. Thompson's alleged statements are similar to the statements in *Reginald Martin*. The question of whether a business is creditworthy is not mere opinion, but is capable of calculation. If the truth

14

is that ZEA was incapable of obtaining credit due to its financial condition, then Thompson's statement—if he made it—was a false statement of material fact, and the Plaintiff's allegation is enough to survive a 12(b)(6) motion.

Additionally, the Court finds the Plaintiff has satisfied the heightened pleading requirements of Rule 9(b). As outlined above, the Plaintiff is required to state a claim of fraud with particularity, meaning the "who, what, when, where and how." *DiLeo*, 901 F.2d at 627. Defendant ICIA does not challenge the Plaintiff's satisfaction of the who, when, where and how requirements. Defendant ICIA merely argues that the Plaintiff has failed to state the what—the specific content of the false representations. Defendant ICIA cites *Fidelity National Title Insurance Co. of New York v. Intercounty National Title Insurance Co.* for the proposition that the Plaintiff must provide "enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless."412 F.3d 745, 749 (7th Cir. 2005). But the Plaintiff has satisfied that standard. If the Plaintiff's allegations are groundless, Defendant ICIA can counter that Thompson did not claim ZEA was creditworthy or able to perform under a possible contract in the late spring or early summer of 2008 in conversations with IOM executives, or Defendant ICIA can even counter that Thompson's statements were true. In either case, the Plaintiff has pled enough detail to allow Defendant ICIA to rebut the claims if they are groundless. Defendant ICIA also cites case law for the proposition that the Plaintiff must provide the specific rather than the general content of any alleged false statements. *Graue Mill*, 927 F.2d at 992 (fraud complaint must "state the 'specific content of the false representations'") (quoting *Moore*, 885 F.2d at 540); *Heller Bros. Bedding, Inc. v. Leggett & Platt, Inc.*, No. 01 C 3409, 2001 WL 740514, at *3 (N.D. Ill. June 28, 2001). The Plaintiff specifically alleges that Thompson stated

15

ZEA was creditworthy and capable of performing under the terms of the emerging contract. The Plaintiff has done more than make "[c]ryptic statements suggesting fraud" or "[m]ere allegations of fraud." *Graue Mill*, 927 F.2d at 992 (internal quotation marks and citations omitted). The Plaintiff has alleged the content of Thompson's alleged statement specifically, providing more particularity than allegations in the cases upon which Defendant ICIA relies. *See id.* at 993 (general statements about future business activity with no mention of when they were made, where they were made, or to whom they were made did not satisfy Rule 9(b)); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 669 (7th Cir. 2008) (pleading that failed to provide who made the allegedly fraudulent statements, when they were made, or how they were communicated did not satisfy Rule 9(b)); *Katz v. Household Intern., Inc.*, 91 F.3d 1036, 1039 (7th Cir. 1996) (complaint that did not identify a single specific statement by the defendant did not satisfy Rule 9(b)); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir. 1987) (same); *Heller Bros.*, 2001 WL 740514, at *3 (pleading that specifically alleged some statements but failed to allege the content of other statements did not satisfy Rule 9(b)). The Plaintiff has pled the contents of allegedly fraudulent statements with sufficient particularity to satisfy Rule 9(b).

Furthermore, the Court has considered whether any of the fraud allegations should be barred by the statute of frauds, but finds the statute of frauds inapplicable under the facts as pled. Defendant ICIA urges that the statute of frauds bars any claim where a party has purportedly promised to answer for the debts of another. *See* Ind. Code § 32-21-1-1(b)(2) (2011). In support, Defendant ICIA cites only one case— *CR3 of Indiana, LLC v. Speciality Surfaces International, Inc.*, No. 1:07-cv-0991-DFH-JMS, 2008 WL 3914092 (S.D. Ind. Aug. 19, 2008). In *CR3*, the

16

court dismissed a fraud claim because the allegedly fraudulent statement was not in writing. *Id.* at *10. The plaintiff in *CR3* alleged that the defendant promised to secure a bond in favor of the plaintiff, and the plaintiff was suing in fraud because the defendant failed to do as promised. The Court finds *CR3* distinguishable on its facts. The defendant in *CR3* had purportedly promised to take an action in the future, and a fraud claim for failure to take that future action was properly dismissed. But the Plaintiff complains not that Defendant ICIA is liable in fraud for failure to financially back ZEA, but rather that Defendant ICIA is liable in fraud for not backing ZEA at the time Thompson made the statement that it was doing so. The Plaintiff's allegation is in the present: "Thompson stated to Ramon Loucks, president of IOM, that ICIA was providing funding to ZEA in order to ensure ZEA's financial stability." (Am. Compl. ¶ 38.) Viewing the Amended Complaint in the light most favorable to the Plaintiff, it alleges a presently-existing falsehood, not a wrong due to future inaction. As pled here, Thompson's statement is not a promise to answer for the debts of ZEA, but rather a statement of presently-existing material fact which he knew to be false at the time he made it, unlike the allegedly-fraudulent statement in *CR3*, which could only be false if the *CR3* defendant later failed to do what he supposedly said he would do. The Plaintiff is making a specific allegation about a statement relating to the presently-existing financial soundness of ZEA, which if false, could form the basis of a fraud claim and would not be barred by the statute of frauds.

Finally, the Court finds that the Plaintiff's reliance and whether it was reasonable are questions of fact that are not appropriate for determination at this stage of the litigation. Defendant ICIA urges that the Plaintiff either did not rely on Thompson's statements about the financial health of ZEA, or if it did rely, its reliance was unreasonable because it made

independent inquiries during the contract negotiations, requested specific financial information from ZEA, negotiated specific, favorable contractual terms, and the final contract included an integration clause stating that the contract was the "final and complete" agreement. Undoubtedly, to support a fraud claim, the Plaintiff must plead that it actually relied, and that its reliance was also justifiable. *Hizer*, 937 N.E.2d at 5. "However, the reasonableness of a party's reliance generally becomes a question of fact where the record evidence is susceptible, as it is in this case, to more than one interpretation." *Reginald Martin*, 478 F. Supp. 2d at 1090. Indiana courts have long held reliance unreasonable where a party blindly trusts another, where the facts are "equally open to the observation of both parties," and where the party claiming fraud, "had he exercised ordinary prudence, could have attained correct knowledge." *Pugh's IGA, Inc. v. Super Food Servs., Inc.*, 531 N.E.2d 1194, 1198–99 (Ind. Ct. App. 1988) (quoting *Frenzel v. Miller*, 37 Ind. 1, 17 (Ind. 1871)). Defendant ICIA cites many cases in support of these basic principles.[4] But the pleadings, when viewed in a light most favorable to the Plaintiff, show that the question of reliance cannot be resolved under a Rule 12(b)(6) motion.

Defendant ICIA argues that if "ample opportunity existed to discover the truth, then reliance is not justified." (Mem. Law Supp. Def.'s Mot. to Dismiss 19) (citing *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 692 N.E.2d 812, 818–19 (Ill. App. Ct. 1998)). But the pleadings before the Court do not indicate whether ample opportunity existed to discover the truth. Defendant ICIA has argued that because the Plaintiff conducted an investigation, it must have been able to find out the truth of ZEA's financial condition. Viewed

---

[4]Most of the cases cited by Defendant ICIA are Illinois cases or apply Illinois law; however, as discussed above, the Court will analyze them as persuasive authority.

18

in the light most favorable to the Plaintiff, nothing before the Court suggests that the Plaintiff's opportunity to request documents necessarily provided ample opportunity for the Plaintiff to discover whether Thompson's statements were false.

Defendant ICIA cites cases where a party's failure to investigate undercut its reliance argument. *Seefeldt v. Millikin Nat'l Bank of Decatur*, 506 N.E.3d 1052, 1056 (Ill. App. Ct. 1987); *Bank of Chi. v. Park Nat'l Bank*, 640 N.E.2d 1288, 1298 (Ill. App. Ct. 1994). Defendant ICIA also cites cases where a party's actions antithetical to reliance undercut its argument that reliance existed at all. *Dombrowski v. Adm'r, Fed. Emergency Mgmt. Agency*, No. 2:08-CV-217-TS, 2010 WL 3671976, at *6 (N.D. Ind. Sept. 13, 2010); *Small v. Sussman*, 713 N.E.2d 1216, 1222 (Ill. App. Ct. 1999). Certainly Defendant ICIA is correct that a party cannot receive information rebutting the misrepresentation, then continue to rely on the misrepresentation, and still claim a fraudulent inducement. *Peterson Indus., Inc. v. Lake View Trust & Sav. Bank*, 584 F.2d 166, 168–69 (7th Cir. 1978); *Dixie-Portland Flour Mills, Inc. v. Nation Enters.*, 613 F. Supp. 985, 990 (N.D. Ill. 1985). But no such facts are before the Court. The Plaintiff did conduct its own inquiry, but the Court must accept as true the Plaintiff's well-pled allegation that it relied on the statements by Thompson, and the Court cannot determine as a matter of law that this reliance was unreasonable. The Plaintiff did not take action antithetical to reliance, and the pleadings do not suggest that the Plaintiff received information rebutting any of Thompson's allegedly false statements. The pleadings do not lead to a reasonable inference that information to resolve the truth or falsehood of Thompson's statements was "equally open to the observation of both parties." *Pugh's IGA*, 531 N.E.2d at 1199. Nor do the pleadings—when viewed in a light most favorable to the Plaintiff—show that with the exercise of "ordinary prudence," the Plaintiff

19

"could have attained correct knowledge." *Id.* To the extent that Defendant ICIA argues the Plaintiff would have found more information to rebut any fraudulent statements made by Thompson if the Plaintiff had only conducted more investigation, such facts are simply not before the Court. As stated in an opinion cited by Defendant ICIA in its brief: "the question of whether a plaintiff's reliance was reasonable is usually a question of fact," and only becomes a question for the court "where it is apparent from the undisputed facts that only one conclusion can be drawn." *Kopley Group V., L.P. v. Sheridan Edgewater Props., Ltd.*, 876 N.E.2d 218, 229 (Ill. App. Ct. 2007). In this case, discovery has not been completed, and different conclusions can be drawn from the pleadings. As to Defendant ICIA's argument that the integration clause of the contract precludes any argument that the Plaintiff relied on Thompson's statements, the Court agrees with the Plaintiff that the integration clause only applies to the parties to the contract—ZEA and the Plaintiff. It does not state whether the Plaintiff could be relying on statements by the CEO of Defendant ICIA, which was not a party to the contract. For all the reasons discussed, the existence and reasonableness of the Plaintiff's alleged reliance is not appropriate for the Court to decide on a Rule 12(b)(6) motion.

Accordingly, the Court finds the Plaintiff has stated a claim of fraudulent misrepresentation upon which relief can be granted, and Defendant ICIA's motion to dismiss will be denied with respect to Count II.

**C.     Count III–V: Constructive Fraud, Negligent Misrepresentation, and Breach of**

**Fiduciary Duty**

The Plaintiff's next three allegations against Defendant ICIA—claims for constructive fraud, negligent misrepresentation, and breach of fiduciary duty—all require the existence of a fiduciary duty owed by Defendant ICIA to the Plaintiff. Because the Court concludes the Plaintiff's complaint alleges facts inconsistent with the existence of a fiduciary relationship, the Court will dismiss Count III, Count IV, and Count V without prejudice.[5]

To sustain a claim of constructive fraud in Indiana, a plaintiff must show: "1) a duty owing by the party to be charged to the complaining party due to their relationship; 2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party." *Heyser*, 933 N.E.2d at 19–20. The Plaintiff argues it has satisfied the first element of constructive fraud because a fiduciary relationship existed between the Plaintiff and Defendant ICIA. Thus, according to the Plaintiff, Defendant ICIA's silence with respect to ZEA's financial instability, which led to reliance and proximate injury to the Plaintiff, and which worked to Defendant ICIA's advantage, states a claim for constructive fraud under Indiana law. But absent a duty owed by Defendant

---

[5]Counts III, IV, and V are dismissed without prejudice, with leave to re-file if the Plaintiff is able to successfully amend its complaint consistent with this Opinion within fourteen days of the date of this Order. *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint."); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004) (stating that the general rule is that "the district court should grant leave to amend after granting a motion to dismiss"); *Polansky v. Anderson*, No. 04 C 3526, 2005 WL 3557858, at *9 n.16 (N.D. Ill. Dec. 29, 2005).

ICIA to the Plaintiff by virtue of their relationship, the constructive fraud claim fails.

To sustain a claim of negligent misrepresentation in Indiana, a plaintiff must show that the defendant, "in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions," and that the defendant "fails to exercise reasonable care or competence in obtaining or communicating the information." *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 628 (Ind. Ct. App. 1983) (quoting Restatement (Second) of Torts § 552 (1977)) (emphasis omitted). In such case, the defendant will be "subject to liability for pecuniary loss caused to [the plaintiff] by . . . justifiable reliance upon the information." *Id.* But the general rule in Indiana is that "a defendant is not liable under a tort theory for any purely economic loss caused by its negligence." *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 745 (Ind. 2010) (quoting *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726–27 (Ind. 2010)). One exception to this general rule is the "breach of a duty of care owed to a plaintiff by a fiduciary." *Charlier*, 929 N.E.2d at 736. The Plaintiff depends on this exception— its allegation that a fiduciary duty existed on the part of Defendant ICIA—to maintain its claim for negligent misrepresentation.

To sustain a claim of breach of fiduciary duty in Indiana, a plaintiff must show: "(1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Farmers Elevator Co. of Oakville, Inc. v. Hamilton*, 926 N.E.2d 68, 79 (Ind. Ct. App. 2010). "In order to properly state a claim for breach of fiduciary duty, [p]laintiff must plead facts to demonstrate the existence of a fiduciary relationship of trust and confidence." *First Bank of Richmond, N.A. v. Credit Suisse First Boston*

*Corp.*, No. 1:07-cv-1262-LJM-TAB, 2008 WL 4410367, at *9 (S.D. Ind. Sept. 24, 2008). The

Seventh Circuit has stated that "[t]he essence of a fiduciary relationship is that one party is

dominated by the other."[6] *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir.

1992). Further, "[t]he fact that one party trusts the other is insufficient. We trust most people

with whom we choose to do business." *Id.* Some factors to be analyzed concerning the existence

of a fiduciary relationship include "kinship, age disparity, health, mental condition, education,

business experience, and the extent of reliance." *Id.* In alleging a fiduciary duty, "a plaintiff can

plead himself out of court by pleading facts that undermine the allegations set forth in the

complaint." *Polansky*, 2005 WL 3557858, at *8.

Finally, all of the Plaintiff's claims have "factual allegations involving fraud,"

*Rosenbaum*, 2008 WL 2518697, at *2, and thus the heightened pleading requirements of Rule

9(b) will apply. *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir. 1966) (applying heightened

pleading requirement for fraud to a breach of fiduciary duty claim); *Taylor v. Feinberg*, No. 08-

CV-5588, 2009 WL 3156747, at *5 (N.D. Ill. Sept. 28, 2009) (requiring that breach of fiduciary

duty be pled with particularity).

The Plaintiff claims that Defendant ICIA voluntarily took on a role as its agent for the

purposes of negotiating a contract with ZEA. It did so, the Plaintiff argues, by forwarding funds

to ZEA on its behalf and by providing information to the Plaintiff about ZEA. In Indiana, to

establish that an agency relationship existed, a plaintiff must show: "(1) a manifestation of

consent by the principal to the agent, (2) an acceptance of the authority by the agent, and (3)

---

[6]Here the Seventh Circuit was applying Illinois law, but, as discussed above, the parties have not
identified a conflict between the substantive law of Illinois and Indiana. The Court will therefore consider
the Seventh Circuit's articulation of the principles concerning fiduciary relationships.

control exerted by the principal over the agent." *Johnson v. Blankenship*, 679 N.E.2d 505, 507

(Ind. Ct. App. 1997) (citing *Medtech Corp. v. Ind. Ins. Co.*, 555 N.E.2d 844, 850 (Ind. Ct. App.

1990)). The Court agrees with Defendant ICIA that the facts as pled by the Plaintiff do not

establish the existence of a fiduciary relationship generally, or an agency relationship

specifically.

The pleadings before the Court establish the opposite of an agency relationship between

the Plaintiff and Defendant ICIA. Instead of showing that Defendant ICIA was the Plaintiff's

agent for the purposes of negotiating a contract with ZEA, the allegations show that Defendant

ICIA was in business with ZEA, and had a significant profit interest in ZEA's success. The

Plaintiff alleges that Defendant ICIA loaned money to ZEA, not to the Plaintiff. (Am. Compl. ¶

25.) The Amended Complaint alleges that when Defendant ICIA loaned ZEA the money, it

referred to ZEA as its "strategic partner" and further stated "ICIA has put a pony in the race!!!"

(*Id.* ¶ 26.) The Plaintiff repeatedly alleges the existence of a business relationship between ZEA

and Defendant ICIA (*Id.* ¶¶ 11& 15) ("ZEA will compensate ICIA under the GSS agreement"),

and specifically alleges that Defendant ICIA had a "pecuniary interest in ZEA and financially

stood to benefit from IOM entering into a contractual relationship with ZEA." (*Id.* ¶ 80.) The

Plaintiff even alleges that Defendant ICIA petitioned on ZEA's behalf, not on the Plaintiff's

behalf. For example, in Thompson's August 6, 2008, email, he tells the Plaintiff that ZEA "really

could use the comfort of the signed document and transfer of monies." (*Id.* Ex. D.) This is a case,

like *Polansky*, 2005 WL 3557858, at *8–9, where the Plaintiff has pled facts inconsistent with

the existence of a fiduciary relationship. *See also Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716,

727 (7th Cir. 1986) ("[I]f the plaintiff . . . pleads facts, and the facts show that he is entitled to no

relief, the complaint should be dismissed."); *Bank of Am. v. First Mut. Bancorp of Ill. Inc.*, No. 09 C 5108, 2010 WL 2653339, at *10 (claim of breach of fiduciary duty defeated where the "allegations show that the opposite is true."); *Steele v. GE Money Bank*, No. 08 C 1880, 2009 WL 393860, at *6 (N.D. Ill. Feb. 17, 2009) ("Because the existence of an actual or apparent agency relationship is based entirely on speculation, the portions of the complaint which rest on an agency theory . . . are dismissed."). The Plaintiff's Amended Complaint does not allow the Court to infer that the Plaintiff consented to allowing Defendant ICIA to advocate on its behalf, Defendant ICIA accepted that authority, and the Plaintiff then controlled Defendant ICIA. On the contrary, the Plaintiff's complaint shows that Defendant ICIA was in business with ZEA from the beginning, had a financial incentive in nudging the contract toward completion, and even advocated on ZEA's behalf to further the contract. Like the *Polansky* defendant, Defendant ICIA had an "incentive to maximize . . . profit"—specifically, its own profit. The Court agrees with Defendant ICIA that the relationship between the Plaintiff and ICIA as set forth in the Amended Complaint is antithetical to a fiduciary relationship.

The Plaintiff urges the Court to find a fiduciary relationship as in *Ransom v. A.B. Dick Co.*, 682 N.E.2d 314, 322 (Ill. App. Ct. 1997), and *Demming v. Underwood*, 943 N.E.2d, 943 N.E.2d 878, 882–83 (Ind. Ct. App. 2011). The Court finds both *Ransom* and *Demming* distinguishable from the situation presented in the Plaintiff's Amended Complaint. The *Ransom* court was persuaded by the depth of the "intimate working relationship" between the plaintiff and defendant, a relationship so deep that the "defendant's representatives regularly attended [plaintiff's] company business meetings, were privy to its business plans and provided credit and guaranteed financial obligations of the company." *Ransom*, 682 N.E.2d at 322. In such a

situation, the court found a "jury could reasonably conclude that a special relationship existed." *Id.* Similarly, the *Demming* court found an agency relationship based on a close business relationship. In *Demming*, the defendant, a realtor, spent several years pursing the plaintiff's interest in real estate deals, and the parties understood that the defendant would be compensated with a real estate commission for a finalized sale. *Demming*, 943 N.E.2d at 882. Additionally, the defendant in *Demming* received and followed instructions from the plaintiff on multiple occasions over the years. No such facts are before the Court. The Amended Complaint alleges a situation much different from *Ransom*; instead of Defendant ICIA guaranteeing the financial obligations and offering credit to the Plaintiff, Defendant ICIA was allegedly guaranteeing the financial obligations of ZEA. The Amended Complaint also presents a situation distinct from *Demming*; instead of Defendant ICIA taking orders from the Plaintiff for a commission and working to further the Plaintiff's interests, Defendant ICIA was actually taking orders from no one for no pay[7] and working to further its own interests, along with the interests of ZEA, its business partner. The Plaintiff's Amended Complaint indicates that it knew Defendant ICIA had a profit interest in the success of ZEA, ICIA's business partner, from the beginning. Keeping in mind the parties' relative business acumen—the Plaintiff pleads that it is a national and international grain supplier, not a business neophyte—as well as the requirement that a fiduciary relationship sounding in fraud must meet the heightened pleading requirements of Rule 9(b), the Court finds that the Plaintiff has failed to plead the existence of a fiduciary relationship between itself and Defendant ICIA.

---

[7]The Plaintiff argues that an agency relationship can be shown in the absence of compensation. *Demming*, 943 N.E.2d at 884 n.2. The Court agrees, but absence of compensation is one factor leading to the conclusion that the Plaintiff has pled facts incongruous with the existence of a fiduciary relationship.

Absent a fiduciary relationship, the Plaintiff has not stated a claim of constructive fraud upon which relief can be granted, because constructive fraud requires that the defendant have a duty to speak. Similarly, absent a fiduciary relationship, the Plaintiff has not stated a claim for negligent misrepresentation upon which relief can be granted because the Plaintiff's claim for monetary damages will not fall under the exception to the economic loss rule for breach of a fiduciary duty. Finally, axiomatically, the Plaintiff's claim of breach of a fiduciary duty is insufficient absent a fiduciary duty owed by Defendant ZEA to the Plaintiff. Accordingly, the Court will grant Defendant ICIA's Motion to Dismiss under Rule 12(b)(6) for Count III, Count IV, and Count V.

**D.       Count VI — Civil Conspiracy**

Indiana law recognizes a cause of action for damages resulting from a conspiracy. *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (Ind. 1966). A conspiracy is defined as "a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not itself unlawful, by unlawful means." *Id.* (citations omitted). Civil conspiracy is not an independent cause of action, but must be pled with an underlying tort. *Heyser*, 933 N.E.2d at 20 (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)). As long as a complaint properly alleges damages resulting from a conspiracy to commit an underlying tort, it survives a motion to dismiss. *Sims v. Beaver*, 757 N.E.2d 1021, 1026 (Ind. Ct. App. 2001).

Defendant ICIA argues that all of the Plaintiff's underlying tort claims should be dismissed, and accordingly the civil conspiracy claim should be dismissed as well. However,

Defendant ICIA appears to concede that the civil conspiracy claim survives if one of the underlying tort claims survives. Because the Court concludes the Plaintiff has stated a claim for fraudulent misrepresentation upon which relief can be granted, and because the Plaintiff has alleged damages resulting from a conspiracy between ZEA and Defendant ICIA to fraudulently induce the Plaintiff to contract with ZEA (Am. Compl. ¶¶ 95), the civil conspiracy claim also states a claim upon which relief can be granted, and Defendant ICIA's Motion will be denied with respect to that claim.

### E.      Rule 54(b)

Finally, Defendant ICIA requests an entry of final judgment under Rule 54(b). Rule 54(b) permits a district court, in a case involving multiple claims or parties, to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Defendant ICIA's request for final judgment under Rule 54(b) is denied because claims against Defendant ICIA remain, and because the facts underlying the dismissed claims are intricately connected to the facts underlying the remaining claims.[8] *See Lottie v. W. Am. Ins. Co.*, 408 F.3d 935, 938 (7th Cir. 2005) ("Rule 54(b) permits entry of a partial final judgment only when all of one party's claims or rights have been fully adjudicated, or when a distinct claim has been fully resolved with respect to all parties") (quoting *Factory Mut. Ins. Co. v. Bobst Group USA, Inc.*, 392 F.3d 922, 924 (7th Cir. 2004)); *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 515 (7th Cir. 2002) (final

---

[8]Additionally, the Plaintiff has leave to re-file the claims involving breach of a fiduciary duty, so final judgment on those claims would be inappropriate.

28

judgment on a single claim under Rule 54(b) only appropriate when the claim involves a different set of facts from the other claims).

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Defendant's Motion to Dismiss [ECF No. 26]. Count III, Count IV, and Count V are dismissed without prejudice, with leave to re-file within fourteen days of the date of this Order.

SO ORDERED on October 20, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION